### PEOPLE v. HENRIES.

*(Supreme Court, General Term, First Department. May 9, 1890.)*

FORGERY—EVIDENCE—SUFFICIENCY.

Defendant in an indictment for forgery told prosecutor that he had a customer for a diamond ring, whereupon the ring was delivered to him. Afterwards he said

that he had sold the ring, and delivered to prosecutor $20 and a contract of pur chase, with the names of the alleged purchaser and a surety appended. Defendant admitted that he wrote both signatures himself, and that he delivered the paper to prosecutor. The court charged that the question was whether defendant forged the instrument with intent to defraud, and that he was entitled to the benefit of a rea sonable doubt. *Held*, that a conviction of forgery in the second degree would not be disturbed.

Appeal from court of general sessions, New York county.

James P. Henries was convicted of forgery in the second degree, and appeals.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*M. Meyer*, for appellant. *John R. Fellows*, Dist. Atty., (*McKenzie Semple,* of counsel,) for the People.

BRADY, J.   The complainant, Walter Doughty, was engaged in the jewelry business, and the appellant had occasionally sold jewelry for him upon install ments.   Prior to the 1st of October, 1889, the appellant told Doughty that he had a customer for a diamond ring; and Doughty delivered one to him of the value of $110, which he took to show to his customer.   On the 1st of October the appellant informed Doughty that he had sold the ring to a Mr. Bergmann, at the same time paying Doughty $20 on account of the price, and delivering to him a paper which is as follows:

"DOUGHTY & COOPER.   AMERICAN WATCHES, DIAMONDS, AND JEWELRY.
6 MAIDEN LANE, NEW YORK.
"NEW YORK, October 1st, 1889.

"This certifies that I have received, and agree to purchase, from Doughty & Cooper, No. 6 Maiden Lane, N. Y., No. 12 W., 1 s. st. diamond ring, $1\frac{1}{3}$, valued at $110.00, on the following terms and conditions, viz., that I will pay said firm $10.00 per month, each and every month, until the sum of $110.00 is paid in full.   $20.00 paid on a/c.   That, if default be made in any pay ments as above stated I agree to return said dia. ring to Doughty & Cooper in good order, as received, and authorize them to retain the sum of ——— from my payments, which sum shall be considered a fair value for the use of said ring while in my possession, to indemnify them from loss on account of no sale being effected, and to pay expenses of collecting money.   It is under stood and agreed that the title to said dia. ring remains in said Doughty & Cooper until the full amount of $110 is paid, and that I will not sell or dis pose of said dia. ring so long as the title remains in said firm.

"[Name]  .B. BERGMANN, [Residence] 425 Sixth Avenue."

It will be observed that it purports to be signed by B. Bergmann, giving his residence 425 Sixth avenue.   It purported to be indorsed by J. G. Torril lon, the latter agreeing to be responsible for the fulfillment of the contract just recited.   On the trial it appeared that Bergmann did not purchase the ring, and that the signatures both of Bergmann and Torrillon were unauthor ized.   The prisoner was convicted, and motions for new trial and in arrest of judgment were denied, and judgment rendered upon the verdict.   It also ap peared that in the instrument the figures 115 were changed by pencil marks to 110, and these figures related to the value of the ring, and to the sum that was to be paid for it by Bergmann.   The alteration was material; and, if it were a valid instrument, some explanation would have been necessary, doubt less, under the law affecting such an incident, in order to enable the plaintiff, if an action had been commenced upon it, to recover.   The evidence of the witness Doughty on that subject was that he did not know that the instru ment was ever altered, his original price for which the ring was sold being $110, and he thought that the instrument was just in the condition in which it was received from the appellant, except for the stenographer's marks, and the insertion of $20, paid on account, indorsed on it at the request of the ap-

pellant, who had failed to do it at the time he delivered it to the witness. His impression was that it was exactly as it was handed to him. It is true he said that he did not know whether the pencil mark as to the price appeared when he received the paper, but his best recollection was that it did. At all events, he did not notice it; and the appellant's testimony, who was examined on his own behalf, did not clear up the mystery. He said: "I do not think the alterations were made by me. I don't see why I should write in lead-pencil, when it is all in ink with the exception of the $20 on account, and the indorsement on the back. I did not put the lead-pencil marks upon the paper." All the circumstances attending the transaction to which the paper related would tend to make the figures which appear upon it, changed in pencil, the proper ones, inasmuch as $110 was the value of the ring as estimated, and $110 was the price given for it as stated by the appellant, who prepared the paper, and delivered it to the complainant. The point is taken that, the alteration being material, its legal effect was that the instrument became a void instrument. The error of this proposition is that even an apparently material alteration is the subject of explanation, and it does not necessarily follow that if one exists the instrument is void. This subject is elaborately considered in 2 Pars. Cont. § 223; and it appears that, although formerly a material alteration by a stranger was held to render the instrument void, it is no longer the law, if the alteration does not vary the meaning of the instrument, or affects its operation. And it is there said, at page 226, that an alteration which only does what the law will do—that is, only expresses what the law implies—is not a material alteration, and therefore would not avoid the instrument, and that the burden of proof of alteration rests upon the party alleging it. That would necessarily impose upon the defendant the obligation of showing, as he is the person from whom the paper came, and seeks to take advantage of his own act, as it were, that the alteration was made after the paper was delivered. This rule, however, it must be said, applies only to instruments which are valid in their inception. But here the instrument never had any validity whatever; and the evidence seems to be entirely sufficient to justify the conclusion that it was in precisely the same condition when produced upon the trial as it was when delivered to the complainant, for the reason already assigned, namely, that the figures represented the estimated value of the ring, and the price that was to be paid for it.

The other objections interposed it is not necessary to consider. They are technical, devoid of merit, and not entitled to any particular consideration. The defendant was treated by the court with all the liberality that he could expect. He confessed upon his examination that he made both the signatures in question with his own hand, and tendered the paper to the complainant, and that he did it deliberately.

No exception was taken to the charge, in the course of which the learned recorder said to the jury that the whole question was whether the appellant forged the instrument with the intention to defraud, and that he was entitled to the benefit of a reasonable doubt.

In conclusion it is proper to say that, if evidence had been offered in reference to the apparent alteration of the instrument, there might possibly be some question as to the propriety of the judgment. This obstacle was, however, overcome by the evidence relating to it, to which reference has been made. There is, therefore, no reason apparent why this judgment should be interfered with; and it should be affirmed.

DANIELS, J., concurs in the result.

VAN BRUNT, P.'J. I do not see that the question of alteration subsequent to the delivery of the instrument has anything to do with the question as to the guilt or innocence of the defendant. His crime was complete when he

uttered the forged instrument; and what became of it afterwards, or happened to it subsequently, could not relieve him from his offense, which was complete. The judgment should be affirmed.